UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>CONSOLIDATED MERIDIAN FUNDS, a/k/a MERIDIAN INVESTORS TRUST, *et al.*,<br><br>                  Debtors.<br><br>MARK CALVERT, as Liquidating Trustee, *et al.*,<br><br>                  Plaintiffs,<br><br>    v.<br><br>FREDERICK DARREN BERG and MOSS ADAMS LLP,<br><br>                  Defendants. | Case No. C13-1842RSL<br><br>ORDER REVERSING BANKRUPTCY COURT'S ORDER GRANTING MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on plaintiffs' appeal of an order by the United States Bankruptcy Court for the Western District of Washington granting defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The Court has reviewed the parties' submissions. For the reasons discussed below, the Court REVERSES the bankruptcy court's order granting defendants' motion to dismiss and REFERS the matter to the bankruptcy court for further proceedings consistent with this order.

ORDER ON BANKRUPTCY APPEAL

## II. DISCUSSION

**A. Background**

The bankruptcy proceedings underlying this adversary proceeding began in 2010 and 2011 when a group of investment funds controlled by defendant Frederick Darren Berg, known collectively as the "Meridian Funds," collapsed and entered into bankruptcy. The bankruptcy court consolidated the various bankruptcy proceedings connected with Berg and entered an order confirming a consensual Chapter 11 plan (the "Plan"). Appendix II (Dkt. # 9-1) at 4-5. The Plan provides for the creation of a liquidating trust for the Meridian Funds and named Mark Calvert, one of the named plaintiffs in this adversarial proceeding, as the liquidating trustee. The trust holds all claims of the consolidated bankruptcy estate, including any claims the participating investors have against the auditors and accountants for Berg and his funds. Id. The Plan further provides that "the Bankruptcy Court shall retain and have exclusive jurisdiction after the Effective Date over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases or the Plan." Appendix I (Dkt. # 9) at 116.

The trustee and 700+ individual investors filed this action seeking to recover damages from Berg and Moss Adams LLP, an auditor of the Meridian Funds. The trustee sued as the assignee of the investors who were allegedly injured by defendants' malfeasance. Plaintiffs allege three causes of action against defendants: (1) professional negligence; (2) negligent misrepresentation; and (3) fraud. Appendix II (Dkt. #9-1) at 4, 6.[1] Defendants moved to dismiss plaintiffs' First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Appendix II (Dkt. # 9-1) at 4. Applying the "close nexus" test, the Honorable Karen A. Overstreet, United States Bankruptcy Judge, found that this action was not sufficiently "related to" the Meridian

---

[1] The trustee had previously filed a state court action alleging claims similar to those in this proceeding. Opposition (Dkt. # 12) at 7. Plaintiffs voluntarily dismissed that action and filed the instant lawsuit in bankruptcy court. Id. at 8. Plaintiffs have since re-filed a state court action and requested a stay of that proceeding while awaiting the result of this appeal. Id.

ORDER ON BANKRUPTCY APPEAL        -2-

Funds bankruptcy proceeding for the court to exercise subject matter jurisdiction under 28 U.S.C. § 1334(b) and dismissed the action. Plaintiffs filed this appeal.

**B. Subject Matter Jurisdiction**

    **1. Applicable Legal Standard**

Plaintiffs allege that the bankruptcy court applied the wrong legal standard for determining when "related to" jurisdiction attaches under § 1334(b). Opening Brief (Dkt. # 8) at 10-11. They argue that the court should have applied the Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984), "conceivable effects" test instead of the In re Pegasus Gold Corp., 394 F.3d 1189 (9th Cir. 2005), "close nexus" test. Pursuant to § 1334(b), federal courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). As plaintiffs' underlying causes of action are unrelated to Title 11, the bankruptcy court correctly concluded that the "related to" prong was the sole available jurisdictional hook for plaintiffs' claims.

The Ninth Circuit generally applies the Pacor test for determining the scope of "related to" jurisdiction. See In re Marshall, 600 F.3d 1037, 1055 (9th Cir. 2010). A court may assert "related to" jurisdiction over a claim that arises while the bankruptcy is pending when

> the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Id. (quoting Pacor, 743 F.2d at 994). When a Chapter 11 plan has already been confirmed, however, the Ninth Circuit applies a narrower "close nexus" standard. Pegasus Gold, 394 F.3d at 1193-94. In adopting the "close nexus" standard, the Ninth Circuit found that post-confirmation bankruptcy jurisdiction should be limited to claims that could affect the interpretation, implementation, consummation, execution, or administration of the plan. Such a test "recognizes the limited nature of post-confirmation jurisdiction but retains a certain flexibility, which can be especially important in cases with continuing trusts." Id. at 1194.

ORDER ON BANKRUPTCY APPEAL    -3-

Despite the existence of a confirmed liquidation plan in this proceeding, plaintiffs assert that the Pacor "conceivable effects" test should control as opposed to the narrower "close nexus" test. Opening Brief (Dkt. # 8) at 13. Plaintiffs rely on In re Boston Regional Med. Ctr., Inc., 410 F.3d 100 (1st Cir. 2005), for the proposition that the "close nexus" standard should be limited to reorganization plans and does not apply to post-confirmation liquidations. Opening Brief (Dkt. # 8) at 14. Although the Ninth Circuit has not explicitly addressed this distinction, the case law does not support plaintiffs' theory. The "close nexus" standard has generally been applied in a bright-line fashion.  If the proceedings arise pre-confirmation, the Pacor test applies. If the proceeding arises post-confirmation, a "close nexus" is required to give rise to "related to" jurisdiction. See In re Wilshire Courtyard, 729 F.3d 1279, 1287 (9th Cir. 2013) ("The 'close nexus' test determines the scope of bankruptcy court's post-confirmation 'related to' jurisdiction."); In re Ray, 624 F.3d 1124, (9th Cir. 2010) (noting that "post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction"). See also Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 447 B.R. 302, 308 (Bankr. C.D. Cal. 2010) ("Once a bankruptcy plan has been confirmed, the Ninth Circuit has curtailed the reach of 'related to' jurisdiction to ensure that bankruptcy jurisdiction does not continue indefinitely."). There is no indication that the Ninth Circuit would treat claims arising after confirmation of a plan of liquidation differently than claims arising in the context of a reorganization, and it has not cited the reasoning of Boston Regional with approval in the nine years since the case was decided.[2]

Nor is the First Circuit's dichotomy between reorganization plans and liquidation plans particularly persuasive. The First Circuit suggests that the holding in Pegasus Gold was motivated by the convictions that (a) a reorganized company should reemerge in the marketplace

---

[2] Nothing in the Ninth Circuit's opinions suggests that it is particularly concerned with the type of post-confirmation plan at issue.  The court has, in fact, described the Pegasus Gold plan as a "liquidation plan" to which the "close nexus" standard applied.  In re Ray, 624 F.3d at 1124.

ORDER ON BANKRUPTCY APPEAL             -4-

emancipated from the bonds of its former self and "without any special swaddling" from the bankruptcy courts and (b) disputes involving a new company have an ever-decreasing chance of being related to the underlying bankruptcy proceeding. Boston Regional, 410 F.3d at 106-07. The Ninth Circuit does not mention or rely upon either of these considerations, however, and the test it adopted allows the reviewing court to evaluate the actual relatedness of post-confirmation claims, rather than simply presuming that reorganized companies have moved past their pre-confirmation obligations. In explaining why a more generous test for "related to" jurisdiction should apply when a liquidation plan is at issue, the First Circuit reasons that bankruptcy jurisdiction is appropriate because a liquidated debtor is interested in "wind[ing] up its affairs, convert[ing] its assets to cash, and pay[ing] creditors a pro rata dividend," activities that are "intimately connected with the efficacy of the bankruptcy proceeding" because they "directly impact the amount of the liquidating dividend eventually paid to [the] creditors." Id. at 107. The Ninth Circuit, on the other hand, has no interest in extending bankruptcy jurisdiction to cases in which the debtor or the trustee is simply attempting to increase the assets available for distribution to the creditors. Pegasus Gold, 394 F.3d at 1194 n.1 ("[W]e are not persuaded by the Appellees' argument that jurisdiction lies because the action could conceivably increase the recovery to the creditors. As the other circuits have noted, such a rationale could endlessly stretch a bankruptcy court's jurisdiction."). The Supreme Court's jurisprudence also throws doubt on the First Circuit's rationale: the Court has noted that "[t]he jurisdiction of bankruptcy courts may extend more broadly" when dealing with a reorganization under Chapter 11 than a liquidation under Chapter 7.[3] Celotex Corp. v. Edwards, 514 U.S. 300, 310 (1995). Having found no support in this jurisdiction for the First Circuit's reorganization/liquidation dichotomy and being unconvinced of its soundness, the Court finds that the "close nexus" test applies to all post-confirmation claims.

---

[3] The Plan at issue in this case is a consensual Chapter 11 plan that provides for the creation of a liquidating trust.

ORDER ON BANKRUPTCY APPEAL        -5-

### 2. Application of "Close Nexus" Standard

Under the "close nexus" standard, the Court evaluates the nexus between the claims asserted and the bankruptcy plan or proceeding to determine whether it is sufficiently close to uphold bankruptcy court jurisdiction over the matter. Pegasus Gold, 394 F.3d at 1194. "[M]atters affecting 'the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus.'" Id. (quoting In re Resorts Int'l, Inc., 372 F.3d 154, 166-67 (3d Cir. 2004)). In this case, the trustee argues that the professional negligence, negligent misrepresentation, and fraud claims asserted on behalf of the Meridian Fund investors against Moss Adams have a "close nexus" with the bankruptcy Plan because (a) the Plan states that the bankruptcy court shall have exclusive jurisdiction over the claims, (b) the claims asserted were assigned by the investors to the liquidating trust for the trustee to prosecute pursuant to the Plan, (c) any recovery obtained will be distributed in accordance with the Plan, and (d) the claims will require an interpretation of the Plan and may result in factual findings that conflict with the bankruptcy court's determinations. The Court will evaluate each of these arguments, keeping in mind "the limited nature of post-confirmation jurisdiction" and the need for "a certain flexibility" to accomplish Congress' intent that bankruptcy courts have "comprehensive jurisdiction so that they could deal efficiently and expeditiously with matters connected with the bankruptcy estate." Pegasus Gold, 372 F.3d at 1194; Resorts Int'l., 372 F.3d at 163-64.

#### a. Exclusive Jurisdiction Pursuant to the Plan

Plaintiffs cannot "write their own jurisdictional ticket" by simply declaring in the Plan that the bankruptcy court has jurisdiction. Resorts Int'l., 372 F.3d at 161. In general, neither the parties nor the court have the power to confer federal jurisdiction by agreement or consent: jurisdiction is circumscribed exclusively by Article III and congressional enactments. Karcher v. May, 484 U.S. 72, 77 (1987); Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). The Plan at issue acknowledges as much by

providing that the bankruptcy court shall have exclusive jurisdiction "to the greatest extent permitted by applicable law." Appendix I (Dkt. # 9) at 116-17.

### b. Assignment of Claims to the Trustee

Where a claim is specified in the Plan and reserved for prosecution by the trustee on behalf of the creditors, such facts support "related to" jurisdiction. See In re Regional Diagnostics, LLC, 372 B.R. 3, 24 (N.D. Ohio 2007); In re EXDS, Inc., 352 B.R. 731, 738 (Bankr. D. Del. 2006), abrogated on other grounds by In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007). See also Wilshire Courtyard, 729 F.3d at 1290 (bankruptcy court appropriately exercised jurisdiction where the claim asserted would alter the legal rights of the parties on which the plan was negotiated and confirmed). Unlike a claim that arose post-confirmation, a claim that was considered by the bankruptcy court when confirming the Plan is not the independent initiative of the trustee, but rather a claim that formed part of the calculus of the parties when negotiating the Plan and the pursuit of which is part of the Plan execution and/or implementation. By specifically identifying and reserving a claim as a potential asset of the estate to be pursued for the benefit of the estate's creditors, the parties make clear that the claim is "related to" the bankruptcy Plan or proceeding.

In this case, potential claims against Moss Adams were specifically mentioned in the Plan and assigned to the trustee for the purpose of seeking a recovery that would benefit investors in the Meridian Funds. Appendix I (Dkt. # 9) at 83-85. The Plan further specifies how the proceeds from such actions should be distributed among investors. The trustee's filing of the claims has a close nexus with the bankruptcy Plan: the parties expressly considered those claims and their value when negotiating the Plan and the trustee has sought to implement and execute the terms of the Plan by pursuing those claims.

### c. Distribution of Proceeds to Creditors

The Ninth Circuit is not persuaded by the argument that "related to" jurisdiction lies simply because a claim, if successful, would increase the recovery to creditors. Id. at 1194 n.1.

ORDER ON BANKRUPTCY APPEAL            -7-

See also In re Heller Ehrman LLP, 461 B.R. 606, 610 (Bankr. N.D. Cal. 2011) (holding that the potential gain or loss of assets is alone insufficient to confer bankruptcy court jurisdiction). If such claims do not require an interpretation of the plan and have no effect on its consummation, execution, or administration other than a mere mathematical adjustment, the trustee's independent efforts to vindicate rights and/or locate assets on behalf of creditors is not enough to make the claim "related to" the bankruptcy plan. Otherwise, a trustee could "endlessly stretch a bankruptcy court's jurisdiction" to cover purely state law claims unanticipated in bankruptcy and arising long after the underlying proceeding closed. Pegasus Gold, 394 F.3d at 1194 n.1.

### d. Interpretation of the Plan and Risk of Inconsistent Determinations

The trustee argues that any court presiding over the professional negligence, negligent misrepresentation, and fraud claims against Moss Adams will have to interpret the Plan in order to determine the date on which the statute of limitations began to run and whether the trustee has standing to pursue these claims on behalf of the investors. Given the procedural history of this case, this argument is of relatively new vintage. Until recently, the trustee apparently believed that the state courts were capable of making these determinations without being overwhelmed by the complexities of bankruptcy law or the intricacies of the Plan: he chose to file and litigate the claims in state court prior to initiating this action. Nevertheless, both the statute of limitations and the standing issues would, if raised, require the presiding court to discern the intent behind and effect of provisions in the Plan regarding the "Discovery Date" and the assignment of claims. Although these issues will be determined as a matter of state law, not federal bankruptcy law, the meaning and effect of the Plan will be at issue.

If bankruptcy jurisdiction does not exist over these claims, there is also a risk of inconsistent determinations regarding the validity of the assignments. In January 2013, Judge Overstreet considered that same issue and determined that the Plan constituted a valid assignment of claims against the bank used by Berg and the Meridian Funds and that the trustee had standing to pursue those claims. In re Consolidated Meridian Funds, 485 B.R. 604, 612

ORDER ON BANKRUPTCY APPEAL          -8-

(Bankr. W.D. Wash. 2013). It is possible that a state court making the same determination might come to a different conclusion. The risk of inconsistent determinations arises frequently in our judicial system, however. The exact same claims can and have been brought in multiple jurisdictions depending on the citizenship of the parties and the amount at issue. While courts have some flexibility in consolidating diverse actions in a single venue or before a single judge, they are not free to ignore jurisdictional limitations simply because it would promote uniformity. While avoiding inconsistent determinations and/or collateral challenges to a confirmed plan is a valid consideration when determining "related to" jurisdiction, it cannot dominate the analysis lest jurisdiction be expanded for reasons unrelated to the underlying bankruptcy or plan and therefore unauthorized by § 1334(b). When faced with the same risk of inconsistent determinations in Ray, the Ninth Circuit noted that "such attacks in a second court are routine - and routinely rejected, and [defendant] offers no convincing argument why that fact alone creates jurisdiction under § 1334(b)." 624 F.3d at 1135.

The trustee also argues that "[t]he issues in this case will undoubtedly require any state court that presides over it to issue rulings on the Ponzi scheme and its impact." Opening Brief (Dkt. # 8) at 23. Any relevant facts related to the Ponzi scheme, such as its existence, scope, and effects on plaintiffs, are likely to be established by the findings of the bankruptcy court and will not require readjudication in state court. The success of plaintiffs' claims in this litigation will depend on proof of Moss Adams' conduct and knowledge, facts that have not been considered or determined by the bankruptcy court.

### e. Other Considerations

The Ninth Circuit has not developed a comprehensive list of factors to be considered when determining whether a proceeding that arises post-confirmation has a sufficiently "close nexus" to the underlying bankruptcy plan or proceeding to justify the exercise of jurisdiction under § 1334(b). A review of the governing case law shows that courts have considered many factors and do not always agree on the relative importance to ascribe to each factor. Wilshire

Courtyard, 729 F.3d 1279 (considering whether resolution of the claim will involve an interpretation of the confirmed plan or the confirmation order, whether the claim was part of the conceptual framework of the plan, whether a federal question is at issue, and whether the exercise of jurisdiction is consistent with the equitable objectives of the bankruptcy code); Ray, 624 F.3d 1124 (considering whether the bankruptcy proceeding had been confirmed and consummated, whether the debtor's estate would be impacted by the claim, whether the cause of action arose under state law or would depend upon resolution of a substantial question of bankruptcy law, and whether the claim could undermine a prior determination of the bankruptcy court);[4] In re Valdez Fisheries Dev. Ass'n, Inc., 439 F.3d 545 (9th Cir. 2006) (considering whether the settlement agreement had already been fully implemented as to the debtor and whether a dispute between two creditors would have any effect on the now-closed bankruptcy estate); Pegasus Gold, 394 F.3d 1189 (considering whether resolution of the claim would require interpretation of the plan, whether the claim would affect the implementation of the plan, and whether particular arguments would "endlessly stretch a bankruptcy court's jurisdiction").[5] What

---

[4] Defendants rely on Ray for the proposition that any claim arising under state law and which does "not necessarily depend upon resolution of a substantial question of bankruptcy law" is not "related to" the bankruptcy plan or proceeding. Opposition (Dkt. #12) at 15 (quoting 624 F.3d at 1135). Despite the strong language in Ray, "related to" jurisdiction is more expansive than "arising under" and "arising in" jurisdiction, and the Ninth Circuit has subsequently reaffirmed the broader interpretation espoused in Pegasus Gold. Wilshire, 729 F.3d at 1288-89.

[5] In other circuits, district courts have also considered how the assignment of a cause of action that did not initially belong to the estate affects "related to" jurisdiction. The impact of such assignments has varied widely. Compare Premium of Am., LLC v. Sanchez (In re Premium Escrow Servs., Inc.), 342 B.R. 390, 399 (Bankr. D.D.C. 2006) ("If a litigation trust prosecutes a cause of action that did not belong to the debtor or the debtor's estate prior to confirmation . . . such a claim is not subject to a court's jurisdiction under 28 U.S.C. § 1334."), with McKinstry v. Sergent, 442 B.R. 567, 576 (E.D. Ky. 2011) ("The trust is asserting claims that do not belong to it personally but were transferred to it as part of the bankruptcy plan—and so the implementation and execution of the confirmed Plan are directly at issue.") (internal quotation marks and citation omitted). The Ninth Circuit has not addressed this issue. The Court finds that whether the bankruptcy Plan calls for the trustee to pursue claims originally held by the debtor or claims which the debtor's estate obtained through assignment is a distinction without a difference:  the important point is that both types of claims are

is clear is that determining whether a claim is "related to" the bankruptcy plan or proceeding requires a case-by-case analysis based on "the whole picture." Wilshire Courtyard, 729 F.3d at 1289.

In this regard, the bankruptcy court did not err in considering such matters as the timeliness of this action, the very real risk that plaintiffs are forum shopping, or the state court's familiarity with the issues raised. Although these equitable considerations are valid in order to determine whether bankruptcy jurisdiction has been stretched too far, the touchstone of the jurisdictional analysis in the post-confirmation setting remains whether the claim "affect[s] the interpretation, implementation, consummation, execution, or administration of the confirmed plan." Pegasus Gold, 394 F.3d at 1194. Where, as here, the case involves a continuing trust, the Third and Ninth Circuits have both recognized that the claims "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." Id. (quoting Resorts Int'l, 372 F.3d at 167).

Having reviewed the record, the Court further finds that the express reservation of claims against Moss Adams as a potential asset of the estate to be pursued by the trustee for the benefit of the creditors and the need to interpret certain Plan provisions relevant to the statute of limitations and the validity of the assignment establishes a "close nexus" between this action and the bankruptcy proceeding. See Consolidated Meridian Funds, 485 B.R. 614-15 ("The Trustee seeks to carry out the provisions of the confirmed Plan by pursuing causes of action that have been assigned to him pursuant to the Liquidating Trust. The Meridian Funds are not continuing in business, so there is no danger that the Court's 'related to' jurisdiction will extend into the distant future . . . . Retention of this case and other actions by the Trustee in the Bankruptcy Court provides an efficient forum for resolution of the actions and avoids the need for a state court to parse the terms of the Plan [or] address the standing of the Trustee under the Liquidating

---

pursued in order to implement the Plan.

ORDER ON BANKRUPTCY APPEAL            -11-

Trust . . . ").[6] The Court finds that there is "related to" jurisdiction under § 1334(b).

### III. CONCLUSION

For all of the foregoing reasons, the Court REVERSES the bankruptcy court's order granting defendants' motion to dismiss and REFERS the matter to the bankruptcy court for further proceedings consistent with this order.

Dated this 28th day of May, 2014.

*MWT S Lasnik*
Robert S. Lasnik
United States District Judge

---

[6] Three of the reasons Judge Overstreet retained jurisdiction over the claims against Commerce Bank in <u>Consolidated Meridian Funds</u> – namely, that the claims were asserted by the trustee promptly after confirmation and in conjunction with many similar lawsuits, that the claims were derivative of the claims against Berg and posed the risk of conflicting rulings regarding the underlying Ponzi scheme, and that all of the adversary proceedings would be assigned to the same bankruptcy and district court judges for resolution – do not apply in this case. Despite the weakening equitable arguments for maintaining jurisdiction over this dispute, the fact that these claims were contemplated at confirmation and may impact the consummation, interpretation, implementation, and execution of the Plan as negotiated by the parties satisfies the "related to" prong of § 1334(b).